UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EMMITT SMITH and PROVA GROUP, INC., | § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | CIVIL ACTION NO. 3:20-CV-3178-B |
| TEXTILE RENTAL SERVICES ASSOCIATION and JOSEPH RICCI, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Textile Rental Services Association and Joseph Ricci's Motion to Dismiss Plaintiffs' Complaint (Doc. 9). For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion. Additionally, the Court provides Plaintiffs Emmitt Smith and Prova Group, Inc. one opportunity to amend their complaint.

## I.

## BACKGROUND[1]

This lawsuit arises from two articles pertaining to a patent dispute. Plaintiff Emmitt Smith is a former Dallas Cowboys football player "known for his illustrious football career," "his appearance on 'Dancing With the Stars,'" and his philanthropic work. Doc. 6, Am. Compl., ¶ 11. He "is a known and respected leader in the community and has been an advocate for defending the rights of

---

[1] The Court draws its factual account from Plaintiffs' amended complaint (Doc. 6) and attachments to Defendants' motion to dismiss, which are documents referenced by Plaintiffs and central to Plaintiffs' claims. *See Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (citation omitted).

minorities from exploitation by large, powerful companies." *Id.* ¶ 34. Smith is also the CEO of several business entities, including Plaintiff Prova Group, Inc. ("Prova"). *Id.* ¶ 11.

"Since its inception in 2002," Prova has developed technology that enables "items like uniforms to be functionally and beneficially associated with information processing systems." *Id.* ¶ 12. "This technology includes the use of highly-reliable tags such as radio frequency identification (RFID) tags," and "near field communication (NFC) tags, as well as the creation of interface systems and an information processing infrastructure . . . ." *Id.* One of Prova's technological developments is a patented "interactive technology platform that can be used for many purposes, such as to verify the authenticity of items like the uniforms that certain uniform rental companies rent, as well as uniforms used in sporting events." *Id.* ¶ 14. In sum, this patented technology tracks and verifies the authenticity of these uniforms and other equipment. *Id.*

Prova's attorneys utilize "correspondence and litigation . . . to prevent infringement of and misuse of" Prova's patented technology. *Id.* Of relevance here, Prova engaged "in a letter-writing campaign that" sought "reasonable remuneration from mid-sized companies . . . engaged in the uniform rental business and who were reasonably believed to be infringing on" Prova's technology. *Id.* ¶ 16.

Defendant Textile Rental Services Association (TRSA), Defendant Joseph Ricci (President and CEO of TRSA), and TRSA's representatives made public statements about this letter-writing campaign. *See id.* ¶¶ 15–16. For background, "TRSA is a trade association for its members in the textile rental industry." *Id.* ¶ 15. TRSA thus "represents companies that supply, launder, and maintain linens and uniforms." *Id.*

In March 2020, The Texas Lawbook published an article ("The Texas Lawbook Article")

titled, "Why a Trade Organization is Joining the Defensive Line Against a Dallas Cowboy" ("the 'Title'"). *Id.* ¶ 22; Doc. 10, Defs.' App., 1. The Texas Lawbook Article was published on The Texas Lawbook's website and was written by Natalie Posgate, who is not a party to this lawsuit. Doc. 10, Defs.' App., 1.[2] Overall, The Texas Lawbook Article discusses how TRSA has decided to push back against Prova's letter-writing campaign on behalf of its members in light of its belief that Prova's patents do not extend to the technology utilized by TRSA's members. *See generally id.* at 1–4. The Texas Lawbook Article contains several statements relevant here.

In the table on the following page, the Court summarizes each allegedly defamatory statement by providing a name of the statement; the full statement in bold, along with any relevant context; and the page number from Defendants' appendix (Doc. 10) where the statement appears.

---

[2] The Texas Lawbook Article was also posted on the website of the Dallas Business Journal. *See* Doc. 10, Defs.' App., 13–16.

| Name | Statement | Location in Appendix |
|---|---|---|
| The "very existence" statement | "It's no secret that small businesses are some of the most vulnerable players in the U.S. economy as the coronavirus continues to spread . . . . Many companies in the linen and uniform rental industry, which is largely made up of small, family-owned businesses, are currently laying off massive chunks of staff . . . . **And now, the industry says it has yet another problem that threatens the very existence of some of its companies: former Dallas Cowboys running back Emmitt Smith.** Smith is the founder of Prova Group . . . ." | 1–2 |
| The "Smith" statement | "**Through his lawyers at Jackson Walker, Smith has sent out demand letters to several rental uniform firms alleging the companies' use of inventory rotating and tracking systems violate patents owned by Prova.** The letter asks for the recipient to either cease using its own systems or to pay licensing fees to Prova for using its patents. If the recipient declines to do either, Prova warns in the letter, it may file a federal lawsuit." | 2 |
| The "frivolous lawsuits" statement | "Ricci said that challenging Prova is a 'high priority issue for the TRSA and its legal counsel.' '**We're hoping that by beginning the process and showing that we're serious about defending the industry and pursuing the IPRs on these patents that Prova will back down trying to continue to pursue these frivolous lawsuits,' Ricci said**." | 2 |
| The "trade magazine" statement | "**Citing trade magazine articles from the early 1990s, TRSA says technology Prova claims it invented was in use more than a decade before the company was formed in 2002.**" | 3 |
| The "smaller companies" statement | "It was lost upon Ricci why Smith's company brought the litigation to begin with. '**Some of those targeted have asked why a wealthy former professional athlete with multiple successful businesses would take this type of action that threatens the ability of these smaller companies to stay in business and serve the community,' he said**. 'We think this is a fair question to ask.'" | 4 |

- 4 -

A few days after The Texas Lawbook Article was published, TRSA published a similar article ("the TRSA Article") titled, "TRSA to Lead Fight Against Patent-Infringement Claims." *Id.* at 8. The TRSA Article, in sum, explains that TRSA plans to push back against Prova's efforts to enforce its patents against TRSA's members. *See id.* at 8–9. The "smaller companies" statement by Ricci again appears in the TRSA Article (albeit with minor wording differences). *Id.* at 9. Additionally, the TRSA Article states: "What is surprising is that Prova now says these decade-old methods utilized in the linen, uniform and facility services industry are covered by its patents, and we disagree." *Id.* at 8. The Court will call this the "patents" statement.

After The Texas Lawbook Article and the TRSA Article were published, Prova and Smith filed suit against TRSA and Ricci in this Court. *See generally* Doc. 1, Compl. In the operative complaint, Smith alleges defamation *per se* and defamation *per quod* claims against Defendants, while Prova alleges a business-disparagement claim against Defendants based on an alleged loss of settlement and business revenue due to the articles. *See* Doc. 6, Am. Compl., ¶¶ 22–46. On April 16, 2021, Defendants moved to dismiss all claims asserted against them for failure to state a claim. Doc. 9, Defs.' Mot., 3. Defendants' motion is now ripe for review, and the Court considers it below.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted[.]" *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007). "The court's review [under Rule 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore*, 912 F.3d at 763 (citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

### III.

### ANALYSIS

Below, the Court first examines whether Smith has stated a claim for defamation *per se* or defamation *per quod*. Concluding that he has not, the Court then turns to whether Prova sufficiently alleges its business-disparagement claim, which is premised on three allegedly disparaging statements. The Court holds that Prova has not stated a claim for business disparagement based on two of the alleged statements, but it has stated a claim based on the remaining alleged statement. Finally, the Court provides Plaintiffs leave to amend their complaint.

A.      *The Court Grants Defendants' Motion to Dismiss Smith's Defamation Claims.*

To state a claim for defamation, the plaintiff must sufficiently allege: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citations omitted). With respect to element (3), if the person allegedly defamed is a "private individual," he "need only prove negligence, whereas a public figure or official must prove actual malice." *Id.* (citation omitted). Further, a plaintiff must plead damages "unless the defamatory statements are defamatory *per se*." *Id.* (italics added) (citation omitted). "Defamation *per se* refers to statements that are so obviously harmful that general damages may be presumed." *Id.* (italics added) (citation omitted). For example, "[a] statement that injures a person in [his] office, profession, or occupation is typically classified as defamatory *per se*." *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013) (citations omitted). Defamation *per quod*, on the other hand, "is defamation that is not actionable *per se*." *Id.* (citation omitted).

Here, Smith alleges both defamation and defamation *per se* claims based on several statements. Below, the Court explains that Smith fails to sufficiently allege that some of these statements were even published by Defendants. Then, the Court turns to whether Smith adequately alleges his defamation claims premised upon the remaining statements, which can be attributed to Defendants. Concluding that the remaining statements either lack objectively verifiable facts or cannot reasonably be construed as defamatory, the Court concludes Smith fails to state a claim for defamation or defamation *per se*.

1. <u>Smith's defamation claims premised on the "Title" and the "Smith" statement fail, as Smith does not sufficiently allege that these statements were published by Defendants.</u>

Defendants contend that insofar as "Smith complains of statements . . . that were not made by Defendants," these statements are not actionable in defamation claims against Defendants. Doc. 11, Defs.' Br., 13. Smith does not directly address this contention, though he cites law supporting the notion that publication is an issue of fact. Doc. 15, Pls.' Resp., 9 (citing, *inter alia*, *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App.—Dallas 1986, no writ)).

The Court agrees with Defendants that to the extent Smith alleges statements not made or otherwise attributed to Defendants, these statements are not actionable. As noted above, to recover for defamation, Smith must sufficiently allege "publication of a false statement of fact to a third party[.]" *In re Lipsky*, 460 S.W.3d at 593 (citations omitted). "A statement is published if it is communicated to a 'third person who is capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning.'" *Cooper v. Harvey*, 2016 WL 4427481, at *15 (N.D. Tex. Aug. 21, 2016) (quoting *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.)).

Here, Plaintiffs fail to allege facts sufficient to suggest that either Defendant communicated the following statements to a third party: (1) "Why a Trade Organization is Joining the Defensive Line Against a Dallas Cowboy" (the "Title"); or (2) that Smith sent the demand letters (the "Smith" statement). Specifically, both the "Title" and the "Smith" statement appear in The Texas Lawbook Article without quotation or reference to Defendants. Further, The Texas Lawbook Article was written by Natalie Posgate—not Defendants. *See* Doc. 6, Am. Compl., ¶ 22 (alleging that Posgate was the reporter assigned to the article); Doc. 10, Defs.' App., 1 (listing "Natalie Posgate" under the

"Title" of The Texas Lawbook Article). Under these circumstances, Plaintiffs have not pleaded facts sufficient to suggest that Defendants published the "Title" or the "Smith" statement. Accordingly, irrespective of whether publication is an issue of fact, Smith fails to allege facts that, if true, state a defamation *per se* or defamation *per quod* claim against Defendants based on these two statements. *See, e.g.*, *Reasoner v. Kelly*, 2020 WL 1902536, at *7 (W.D. Tex. Feb. 17, 2020) ("exclud[ing] the allegedly defamatory statements made by people other than [the] [d]efendants and statements not attributed to a specific person"); *MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 377–78 (Tex. App.—Beaumont 2005, no pet.) (examining "the statements attributed to" the defendant in context of an entire article).[3]

> 2. Smith does not state a defamation claim based on the remaining allegedly defamatory statements because these statements are either unverifiable facts or incapable of the alleged defamatory meaning.

Defendants next contend that Smith's defamation claims are premised on statements that are not actionable because they lack objectively verifiable facts. Doc. 11, Defs.' Br., 13–14. Smith devotes much of his response to explaining how the allegedly defamatory statements injure his reputation, but he does not explain how the remaining allegedly defamatory statements are objectively verifiable. *See* Doc. 15, Pl.'s Resp., 8–11.

The Court holds that the remaining allegedly defamatory statements underlying Smith's defamation claims—the "smaller companies" statement, the "very existence" statement, and the

---

[3] Smith also fails to allege facts plausibly suggesting publication by Defendants of the "very existence" statement—"the industry says it has yet another problem that threatens the very existence of some of its companies: former Dallas Cowboys running back Emmitt Smith[.]" Doc. 6, Am. Compl., ¶ 25. This statement, again, makes no reference to Defendants. Nevertheless, the Court assumes, for purposes of resolving this motion to dismiss, that "the industry" refers to Defendants. Additionally, to the extent Smith alleges defamation based on The Texas Lawbook Article "taken as a whole," Smith provides no factual basis for attributing this entire article to Defendants. *See id.* ¶ 24.

"frivolous lawsuits" statement—are not objectively verifiable. Additionally, the "very existence" statement cannot reasonably be construed to mean what Smith alleges. The Court will address each statement in turn below.

### a.  The "smaller companies" statement

First, Smith alleges that Defendants stated that the demand letters "threaten[] the ability of small companies to stay in business and serve the community[.]" Doc. 6, Am. Compl., ¶ 17. Smith alleges this statement is false because "'small companies' were not approached" with demand letters—rather, the demand letters were directed toward "mid-sized companies[.]" *Id.* ¶¶ 16–17. As an initial matter, Smith misquotes the "smaller companies" statement, which reads:

> It was lost upon Ricci why Smith's company brought the litigation to begin with. "Some of those targeted have asked why a wealthy former professional athlete with multiple successful businesses would take this type of action that threatens the ability of these smaller companies to stay in business and serve the community," he said. "We think this is a fair question to ask."

Doc. 10, Defs.' App., 4. Specifically, Smith alleges that Defendants stated Plaintiffs targeted "small companies," while the statement actually reads "smaller companies[.]" So the Court must examine whether Ricci's statement—that "smaller companies," rather than larger companies, were targeted—is actionable.

For a statement to be actionable in a defamation claim, the statement must "assert an objectively verifiable fact, rather than an opinion[.]" *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.) (citation omitted); *see also Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018) (requiring that a statement be "verifiable as false" to support a defamation claim (citation omitted)). "Thus, statements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions." *Dall. Morning News*,

554 S.W.3d at 639 (citation omitted); *see also Jones v. Compass Bancshares Inc.*, 339 F. App'x 410, 412 (5th Cir. 2009) (per curiam) (holding that a "vague and subjective" statement is "incapable of being defamatory"). "Whether a statement is an opinion is a question of law." *Dall. Morning News*, 554 S.W.3d at 639 (citation omitted).

Here, Ricci's statement that "smaller companies" received demand letters is not actionable because its falsity—as alleged by Smith—is not verifiable. Specifically, Smith alleges Ricci's statement is false because the demand letters targeted only "mid-sized companies," not smaller companies. Doc. 6, Am. Compl., ¶ 16. Whether a company is classified as "smaller" or "mid-sized" is not an objectively verifiable fact. Rather, "[i]t is an individual judgment that rests solely in the eye of the beholder[.]" *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 511 (Tex. App.—Tyler 2008, no pet.) (citation omitted). Smith's complaint illustrates this point: Plaintiffs allege that due to the articles at issue, Prova lost out on a settlement deal with "a mid-sized company . . . with annual estimated revenues between $1 and $10 million and with 10 to 100 employees[.]" Doc. 6, Am. Compl., ¶ 46. Smith may deem a company of ten employees to be "mid-sized," whereas another may call that a "smaller" company. Because the "smaller companies" statement, as alleged by Smith, is not "verifiable as false," *Dall. Morning News*, 554 S.W.3d at 639 (citation omitted), Smith fails to state a defamation claim based on the statement. *See, e.g.*, *Palestine Herald-Press Co.*, 257 S.W.3d at 510 (holding statement that a coach's behavior was "the worst thing" the speaker had observed, even when the statement "cit[ed] examples of other bad behavior" observed by the speaker, was "an entirely subjective statement"); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 124 (Tex. 2000) (noting that whether an attorney "was 'deeply' involved" in a case was "not objectively verifiable"); *Paulsen v. Yarrell*, 537 S.W.3d 224, 237 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (finding

statement that certain conduct was "a grave breach of legal ethics" was not verifiable); *Neurodiagnostics Consultants, LLC v. Villalobos*, 2019 WL 4892220, at *4 (Tex. App.—Austin Oct. 4, 2019, no pet.) (reasoning that a statement that a business was "dirty," absent any point of comparison or further information, was "not a verifiable statement of fact" (citation omitted)).

### b. The "very existence" statement

Next, Smith asserts that the following statement from The Texas Lawbook Article is defamatory: "And now, the industry says it has yet another problem that threatens the very existence of some of its companies: former Dallas Cowboys running back Emmitt Smith." Doc. 10, Defs.' App., 2. Smith asserts that the "very existence" statement, in context, creates a "false narrative that [Smith] personally targeted small companies with invalid patent claims." Doc. 15, Pl.'s Resp., 8.

As noted above, *see supra* Section III.A.1, Smith fails to allege that Defendants—rather than Posgate or The Texas Lawbook—published the "very existence" statement to a third party. This alone warrants dismissal of the defamation claims premised on the statement.

Additionally, Smith fails to allege how this statement contains any objectively verifiable fact. Smith appears to allege this statement is false because Smith did not send the demand letters—Prova did. *See* Doc. 6, Am. Compl., ¶ 30. But this statement contains no assertion that Smith sent the demand letters. *See* Doc. 10, Defs.' App., 2. Instead, it conveys that Emmitt Smith is a "problem" for "the industry[.]" *Id.* This is not an objectively verifiable statement.

Further, the "very existence" statement is not reasonably capable of its alleged defamatory meaning. "To answer whether a statement is reasonably capable of defamatory meaning," the Court must ask two questions: "(1) whether the meaning that the plaintiff assigns to the statement[] is reasonably capable of arising from the text of which the plaintiff complains"; and, if so, "(2) whether

the meaning ascribed to the statement by the plaintiff . . . is reasonably capable of defaming the plaintiff." *Miller v. Watkins*, 2021 WL 924843, at *11 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (citing *Dall. Morning News*, 554 S.W.3d at 625).

Because the answer to the first question is "no" with respect to the "very existence" statement, Smith's defamation claims premised on the statement fail. Specifically, the "very existence" statement, taken in context, does not reasonably suggest that Smith, rather than Prova, "personally targeted" the companies. *See* Doc. 6, Am. Compl., ¶¶ 25, 37; Doc. 15, Pls.' Resp., 8. The Texas Lawbook Article repeatedly refers to Prova as the party taking legal action against TRSA's members. *See* Doc. 10, Defs.' App., 2 ("The TRSA told The Texas Lawbook that it has retained [a law firm] . . . to stop Prova from continuing it to [sic] threaten TRSA members."); *id.* ("Ricci said that challenging Prova is 'a high priority issue . . . .'"); *id.* at 3 ("TRSA said that other targets are currently in settlement talks with Prova."); *id.* at 4 ("Ricci emphasized that it would be detrimental to everyone if Prova's litigation caused such a company to cease using its own systems in place."); *id.* ("It was lost upon Ricci why Smith's company brought the litigation to begin with."). Further, The Texas Lawbook Article explains at the outset that "Smith is the founder of Prova[.]" *Id.* at 2. Under these circumstances, "an objectively reasonable reader" would not draw the inference that Smith personally sent demand letters to businesses. *See Dall. Morning News.*, 554 S.W.3d at 637 ("The objectively reasonable reader seeks to place every word and paragraph in context and to understand the relation that the publication's subparts bear to its whole.").

In sum, Smith has not sufficiently alleged that the "very existence" statement was published by Defendants. Further, this statement lacks an objectively verifiable fact. Finally, the statement is not reasonably capable of the defamatory meaning alleged by Smith. Accordingly, he fails to state

a claim for defamation based on the "very existence" statement.

        *c.*      *The "frivolous lawsuits" statement*

Smith also alleges that Defendants defamed him by stating that Prova is pursuing "frivolous lawsuits[.]" Doc. 6, Am. Compl., ¶ 30. But whether a lawsuit is frivolous is not an objectively verifiable fact. Instead, "[i]t is an individual judgment that rests solely in the eye of the beholder."[4] *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex. App.—Houston [14th Dist.], 1998, pet. denied) (finding that "[t]he term 'lawsuit abuse' does not, in its common usage, convey a verifiable fact"); *see also, e.g.*, *Vice v. Kasprzak*, 318 S.W.3d 1, 22 (Tex. App—Houston [1st Dist.] 2009, pet. denied) (concluding that whether someone conducted "unethical business" was an individual judgment, not a statement of fact); *Vecchio v. Jones*, 2013 WL 3467195, at *8 (Tex. App.—Houston [1st Dist.] July 9, 2013, no pet.) (holding that the statement that an individual "brought 'reckless lawsuits'" was "not actionable" (citation omitted)). Thus, Smith fails to state defamation claims premised upon the "frivolous lawsuits" statement.

Because Smith has not stated a claim for defamation, the Court **GRANTS** Defendants' motion to dismiss Smith's defamation *per se* and defamation *per quod* claims.

B.    *The Court Grants in Part and Denies in Part Defendants' Motion to Dismiss Prova's Business-Disparagement Claim.*

To state a claim for business disparagement, the plaintiff must sufficiently allege: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *In re Lipsky*, 460 S.W.3d at 592

---

[4] Indeed, the Court regularly encounters briefing in which one party calls another's position "frivolous." The Court rarely agrees.

(citation omitted).

"[T]he tort of business disparagement encompasses falsehoods concerning the condition or quality of a business's products or services that are intended to, and do in fact, cause financial harm." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). Whether a statement is disparaging is a question of law. *Broughton v. Livingston Indep. Sch. Dist.*, 2010 WL 3056862, at *10 (E.D. Tex. July 29, 2010) (citations omitted). To be disparaging, a statement must be defamatory—"not strictly speaking defamatory in the sense of dignitary harm," but in the sense that the statement "disparages" the plaintiff's "commercial product or activity[.]" *In re Lipsky*, 460 S.W.3d at 591 & n.10; *see also Amini v. Spicewood Springs Animal Hosp., LLC*, 2019 WL 5793115, at *9 (Tex. App.—Austin Nov. 7, 2019, no pet.) (citations omitted); *see also, e.g., Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 358 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citations omitted); *Innovative Block*, 603 S.W.3d at 417 (citation omitted).

Here, Prova alleges Defendants made multiple disparaging statements. The Court examines each statement in turn. Below, the Court first dismisses Prova's business-disparagement claim premised on the "Smith" statement, as Prova has not sufficiently alleged Defendants published this statement. Next, the Court dismisses Prova's business-disparagement claim premised on the "patents" statement due to Prova's failure to allege that the statement is disparaging. Finally, the Court concludes that insofar as Prova relies on the "trade magazine" statement, it has sufficiently pleaded its business-disparagement claim.[5]

---

[5] The parties' briefing raises another allegedy disparaging statement—a reference to "Prova's patent-trolling activities[.]" Doc. 15, Pls.' Resp., 11. Plaintiffs failed to allege that this was a defamatory or disparaging statement in their complaint. *See generally* Doc. 6, Am. Compl. In any event, however, whether

1. <u>Prova's business-disparagement claim premised on the "Smith" statement fails due to Prova's failure to sufficiently allege publication.</u>

First, Prova relies upon The Texas Lawbook Article's statement that Smith sent the demand letters. Doc. 6, Am. Compl., ¶ 40. Prova alleges that by stating that Smith, not Prova, sent the letters, Defendants "lead a potential licensee to believe that [Prova] did not have a valid claim to the [Prova] innovations." *Id.*

But the Court has already held that Plaintiffs fail to allege facts sufficient to suggest Defendants ever published such a statement. *See supra* Section III.A.1. Accordingly, the Prova has not sufficiently alleged a business-disparagement claim premised on the "Smith" statement.

2. <u>Prova fails to state a business-disparagement claim based on the "patents" statement because it has not sufficiently alleged that the statement conveys a disparaging meaning.</u>

Next, Prova alleges that the "patents" statement disparaged Prova. Doc. 6, Am. Compl., ¶ 40. The "patents" statement reads: "What is surprising is that Prova now says these decade-old methods utilized in the linen, uniform and facility services industry are covered by its patents, and we disagree." Doc. 10, Defs.' App., 8. According to Prova, the "patents" statement is false because "counsel for [Prova] explicitly stated" that the systems referred to in this statement "were not encompassed by the claims of the [Prova] patents," and the "patents" statement "disparaged the presumption of validity and enforceability of the [Prova] patents[.]" Doc. 6, Am. Compl., ¶¶ 40–41.

---

Prova is "patent-trolling" is an individual judgment that cannot be verified as false. Accordingly, it is not actionable. *See, e.g., McConnell v. Coventry Health Care Nat'l Network*, 2015 WL 4572431, at *10 (Tex. App.—Dallas July 30, 2015, no pet.) (analyzing a business-disparagement claim and holding that one statement was "not an objectively verifiable fact" and thus not actionable); *Teel v. Deloitte & Touche LLP*, 2015 WL 9478187, at *7 (N.D. Tex. Dec. 29, 2015) ("[E]ven if the plaintiff adequately alleged that [the defendant] published the statements, her failure to adequately allege objectively false statements, let alone false statements relating to [her] economic interests, warrants dismissal of [her] business disparagement claim.").

Prova's business-disparagement claim premised on the "patents" statement fails because the statement is not capable of Prova's alleged disparaging meaning. The Court assumes without deciding that the statement contains an objectively verifiable fact—namely, "that Prova now says these decade-old methods . . . are covered by its patents[.]" *Id.* Prova appears to argue that a reader would draw the inference that because Prova (according to the statement) argues its patents apply to older methods, Prova's patents might be altogether invalid or unenforceable. The Court does not see how an ordinary reader could make such a leap. Rather, an ordinary reader of the "patents" statement would conclude that Prova is in a dispute about the scope of its patents.

Prova's failure to allege how the "patents" statement is capable of a disparaging meaning distinguishes this case from others involving statements related to patents. Namely, both Northern District of Texas cases upon which Prova relies, *see* Doc. 15, Pls.' Resp., 12–13, involve the defendants' accusations of patent infringement by the plaintiffs. *See Vandever LLC v. Intermatic Mfg. Ltd.*, 2011 WL 4346324, at *5 (N.D. Tex. 2011) (holding plaintiff sufficiently alleged business disparagement where it "allege[d] that [the defendant] represented that [the plaintiff] was infringing [the defendant's] patents"); *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 2019 WL 4860959, at *4 (N.D. Tex. Oct. 2, 2019) (finding business-disparagement claim sufficiently alleged where it was based on misrepresentations that the counterclaimant's products infringed on the counterdefendant's patents). The defendants' accusations in these cases thus attack the validity of the plaintiffs' products.

Here, on the other hand, the "patents" statement does not suggest that Prova's technology infringes upon Defendants' products, nor does it otherwise attack Prova's technology. Rather, the statement, at best, misstates Prova's position with respect to the scope of its enforcement actions

against Defendants' member–entities. Under these circumstances, Prova has not sufficiently alleged that the "patents" statement disparages its business interests, so Prova fails to state a claim for business disparagement based on this statement.

### 3. Prova sufficiently alleges a business-disparagement claim based on the "trade magazine" statement.

Finally, Prova alleges that the "trade magazine" statement from The Texas Lawbook Article is actionable: "Citing trade magazine articles from the early 1990s, TRSA says technology Prova claims it invented was in use more than a decade before the company was formed in 2002." *See* Doc. 6, Am. Compl., ¶ 41; Doc. 10, Defs.' App., 3. Prova alleges that like the "patents" statement, the "trade magazine" statement "disparaged the presumption of validity and enforceability of the [Prova] patents[.]" Doc. 6, Am. Compl., ¶ 41.

As a preliminary matter, although Defendants purport to move to dismiss all of Plaintiffs' claims, Defendants fail to address the "trade magazine" statement in their briefing. *See generally* Doc. 11, Defs.' Br. Nevertheless, below, the Court examines whether Defendants' bases for dismissal of the business-disparagement claim warrant dismissal of the business-disparagement claim premised on the "trade magazine" statement.[6]

Defendants first argue Prova has failed to sufficiently allege falsity. Doc. 11, Defs.' Br., 16–19. But Prova has sufficiently alleged that the "trade magazine" statement is false by alleging that Prova's counsel "explicitly stated" that the technology was "not encompassed by the claims of the [Prova] patents." Doc. 6, Am. Compl., ¶ 40.

---

[6] The Court examines only those arguments raised by Defendants and does not otherwise comment on the sufficiency of Prova's allegations.

Next, Defendants contend that their statements cannot "be reasonably interpreted to harm Prova's business reputation." Doc. 11, Defs.' Br., 10. The Court rejects this argument. Unlike the "patents" statements, the "trade magazine" statement could be reasonably interpreted as defaming Prova's products—the statement suggests that Prova's technology, which Prova claims to be novel, is not novel at all.

Finally, Defendants suggest that Prova has "failed to demonstrate" how Defendants' statements "were made with actual malice." *Id.* at 19. "[A] business disparagement defendant may be held liable 'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (emphasis omitted) (citation omitted). As noted above, Prova alleged that its counsel excluded the technology referred to in the "trade magazine" statement from the scope of its patent claims. *See* Doc. 6, Am. Compl., ¶ 40. Taking this allegation as true, the Court concludes Prova has sufficiently alleged that Defendants knew the "trade magazine" statement was false and thus that they made the statement with malice.

In sum, the Court rejects Defendants' arguments for the wholesale dismissal of Prova's business-disparagement claim and holds that Prova has stated a claim for business disparagement based on the "trade magazine" statement.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the business-disparagement claim.

C.  *The Court Grants Plaintiffs Leave to Amend Their Complaint.*

Given that this is the Court's first opportunity to assess the sufficiency of Plaintiffs'

allegations, the Court finds it appropriate to provide Plaintiffs one chance to amend their complaint to remedy the deficiencies noted in this Order to the extent these deficiencies may be remedied. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court **ORDERS** Plaintiffs to file a second amended complaint within **FOURTEEN** (14) days of the date of this Order. Plaintiffs must file a second amended complaint irrespective of whether they decide to re-plead any of their claims.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss (Doc. 9). Plaintiffs must file a second amended complaint, either omitting or remedying any claims deemed insufficiently alleged, within **FOURTEEN (14)** days of this Order.

**SO ORDERED**

**SIGNED: August 12, 2021.**

**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**